```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Lawrence Stewart,                 :

        Plaintiff,                :

    v.                            :    Case No. 2:03-cv-0687

Reginald Wilkinson, et al.,       :    JUDGE SARGUS

        Defendants.               :
```

<u>ORDER AND REPORT AND RECOMMENDATION</u>

Plaintiff, Lawrence E. Stewart, a state prisoner, filed this action against a number of defendants asserting that his constitutional rights were violated while he was incarcerated at the Southern Ohio Correctional Facility and at the Pickaway Correctional Camp.  Among the defendants named in the suit is Dr. John A. Larry, a cardiovascular specialist at the Ohio State University Medical Center.  Mr. Stewart alleges that Dr. Larry assaulted him by injecting his body "with an enhancement fluid that had not yet been made approved for human testing and by administering the same enhancement fluid with several non-sterile syringe parts that were located in a wall cabinet inside the OSU stress test lab..."  Plaintiff's Motion to Prevent Recharacterization of Plaintiff's Original Complaint at p. 15 (doc. #104).  Presently before the Court are Dr. Larry's motion for summary judgment and several related motions.

I.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

>       if any, show that there is no genuine
>       issue as to any material fact and that
>       the moving party is entitled to judgment
>       as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248 (1986). But summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. <u>Anderson</u>, 477 U.S. at 251.

II.

Mr. Stewart initially sought an extension of time until January 17, 2008, to respond to Dr. Larry's motion for summary judgment, and the Court granted the requested extension.  Mr. Stewart subsequently filed a motion on December 27, 2007, to deny summary judgment on the basis that he needed additional discovery in order to formulate a response.  He then proceeded to file his response to Dr. Larry's summary judgment motion on January 15, 2008.  Accordingly, his motion to deny summary judgment pursuant to Fed. R. Civ. P. 56(f) appears to be moot.  The Court further notes that the scheduling order entered in this case established a discovery deadline of September 30, 2005, and it is not apparent from the record that Mr. Stewart has requested any

additional discovery from Dr. Larry.  The motion to deny summary judgment (doc. #110) is, therefore, denied.

                                III.

After Dr. Larry filed his reply memorandum in further support of his motion for summary judgment, Mr. Stewart submitted a response to the reply.  Dr. Larry moved to strike this supplemental memorandum because the local rules do not permit the filing of surreplies without first obtaining leave of court and because Mr. Stewart's response attempts to raise new claims that are arguably outside this Court's jurisdiction.  Mr. Stewart, in turn, filed a motion to strike the motion to strike.

Local Rule 7.2, which governs the submission of motions and other papers, provides for the filing of opposing memoranda and replies, but states that "[n]o additional memoranda ... will be permitted except upon leave of court for good cause shown."  S. D. Ohio Civ. R. 7.2(a)(2).  The Court finds that Mr. Stewart did not obtain leave of court to file his supplemental response. Further, to the extent that his subsequent motion to strike belatedly seeks such leave, he has not shown good cause. Moreover, in a recent order, Judge Sargus, noting that this case has progressed through more than four years of litigation based upon a discrete set of claims, refused to allow Mr. Stewart to add new claims and new defendants because additional layers of litigation would prejudice existing defendants and inhibit this Court's ability to adjudicate this case in a timely fashion.  <u>See</u> Order Denying Motion Seeking Permission to Add Additional Named Prison Officials at p. 3 (doc #120).

For the foregoing reasons, the Court grants Dr. Larry's motion to strike (doc. #121) and denies Mr. Stewart's motion to strike (doc. #122).  Accordingly, Mr. Stewart's surreply and attached exhibits (doc. #119) will not be considered for the purposes of deciding Dr. Larry's motion for summary judgment.

IV.

On July 10, 2002, Mr. Stewart was transported from SOCF to OSU Medical Center to undergo a stress test. (Affidavit of Lawrence E. Stewart at ¶¶1, 2). Dr. Larry was the cardiologist who performed this outpatient procedure. (Id. at ¶2; Affidavit of John Larry, M.D. dated January 28, 2008 at ¶¶7,8).

Mr. Stewart believed that during this stress test he would be placed on a treadmill (Stewart Aff. at ¶2). Prior to his transport to OSU, Mona Parks, a nurse at SOCF, allegedly told him that after being hooked up to various heart and pulse monitors, he would start out walking on the treadmill and gradually increase his pace until it seemed like he was running in a stationary position. See Plaintiff's Response to Defendant's Motion for Summary Judgment at iv. According to Nurse Parks' purported explanation, the procedure would last 7 to 15 minutes depending on his ability to maintain such a pace. Id. Following his consultation with Nurse Parks, Mr. Stewart presumably signed a form consenting to the procedure. Id.

Contrary to Mr. Stewart's expectation, he was not placed on the treadmill although he observed the machine in the examination room at OSU. Id. at v. The referring physician, Dr. Martin Akusoba, had ordered that Mr. Stewart undergo a dobutamine stress echo test. (Larry Aff. at ¶¶8,9). A dobutamine stress echo test is used when a patient cannot walk on a treadmill for period of time sufficient to conduct the type of stress test envisioned by Mr. Stewart. (Id. at ¶9). For this procedure, the patient is injected with dobutamine, a medication that increases the heart rate in a manner similar to exercise. (Id.). At no time is the patient placed on a treadmill. (Id.).

Dobutamine is a drug approved by the United States Food and Drug Administration (Id. at ¶10). It is commonly used with

4

patients at OSU Medical Center and is not an experimental drug or an experimental enhanced serum as alleged by Mr. Stewart. (Id. at ¶11).

Dr. Larry is board certified in internal medicine and cardiovascular disease and is an associate professor of cardiovascular medicine at OSU Medical Center. (Id. at ¶2). He has been a practicing cardiologist involved in the active clinical practice of medicine for eleven years. (Id. at ¶3). As such, he is familiar with the standards of care required of cardiologists and states that the use of dobutamine to conduct stress echo test is within the standard of care for cardiologists. (Id. at ¶¶6, 11). He further testifies that the use of dobutamine was appropriate and within the standard of care for Mr. Stewart's stress test. (Id. at ¶¶11, 19).

In addition to dobutamine, a contrast agent was used during Mr. Stewart's stress test to assist in viewing the images of his heart. (Id. at ¶12). The contrast agent ("definity") was approved for use by the FDA in 2001 (Id. at ¶14). Definity is not an experimental enhancement serum. (Id. at ¶13). At the time of Mr. Stewart's stress test, the use of definity as a contrast agent was common practice at the OSU Medical Center for patients with suboptimal resting echo cardiographic images. (Id. at ¶16). The use of definity was appropriate and within the standard of care for Mr. Stewart's stress test. (Id. at ¶¶12, 16, 19).

During his stress test, Mr. Stewart began to exhibit dyspnea, wheezing, and severe respiratory distress. (Id. at ¶17; Exhibit A). The test was stopped and Mr. Stewart was treated with a bronchodilator (Id.). He was transferred to the emergency department for follow-up treatment. (Id.; Exhibit D). He was given albuterol and stated he was feeling better. (Exhibit D; Larry Aff. at ¶18). He was then discharged on a prednisone burst

and albuterol. (Id.).

Mr. Stewart testifies that as a result of being administered the contrast agent, he "convulsed into a stroke symptoms stage." (Stewart Aff. at ¶10).  He further states that within 24 hours of his return to SOCF he "suffered a permanent injury crippling debilitating major stroke which has terminated [his] walking or running capabilities and permanently disfigured [him]."  Mr. Stewart has not submitted any medical evidence to support either the existence or extent of these injuries or that they were caused by Dr. Larry's actions.

V.

Dr. Larry initially argues that he is immune from civil liability under the protections of the Eleventh Amendment.  In support of this argument, Dr. Larry cites to the decision of Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) in which the Supreme Court held that neither a state nor its officials acting in their official capacities are "persons" for purposes of 42 U.S.C. §1983, and that Congress by enacting that statute did not intend to abrogate the immunity granted to the states by the Eleventh Amendment.  Id. at 68-69.

Dr. Larry concedes that this immunity does not extend to state officials who are sued in their individual capacities. See, e.g., Scheuer v Rhodes, 416 U.S. 232, 243 (1974).  He contends, however, that Mr. Stewart has failed to satisfy the requirement in Wells v. Brown, 891 F.2d 591 (6th Cir. 1989) that plaintiffs seeking damages under §1983 must clearly set forth in their pleadings that they are suing state officials in their individual capacities.  Id. at 592. Dr. Larry further suggests that because he was at all times acting within the course and scope of his employment with OSU Medical Center, he cannot be subject to liability regardless of the capacity in which he has been sued.  See Cowan v. University of Louisville Sch. Of Med.,

6

900 F.2d 936, 942-43 (6th Cir. 1990).

Although Wells has not been formally overruled, the Sixth Circuit has clarified that the failure to state explicitly whether a defendant is sued in his individual capacity "is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice."  Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001) (en banc), cert. denied, 536 U.S. 922 (2002).

> The 'course of proceedings' test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. The test also considers whether subsequent pleadings put the defendant on notice of the capacity in which he or she is sued.

Id. at n.1 (internal citation omitted).

The nature of the claims against Dr. Larry, i.e., the wanton and cruel infliction of pain through medical experimentation, should have alerted him to the potential for individual liability.  The fact that special counsel was retained to represent Dr. Larry apart from the other state defendants implicitly acknowledges that both he and the Ohio Attorney General were aware of this potential.

Mr. Stewart has requested damages of $250,000, $400,000, $500,000 and $25,000 against Dr. Larry and each of the other defendants.  See Complaint at pp. 16-18.  State employees cannot be sued for money damages in their official capacities; therefore, Mr. Stewart's prayer for damages against Dr. Larry further indicates a personal capacity suit.  See Young ex rel. Estate of Young v. Martin, 51 Fed. Appx. 509, 512-13 (6th Cir. 2002).

Dr. Larry is careful not to raise the issue of qualified immunity in his motion for summary judgment. The other state defendants all raised this defense in their Answer. See Defendants' Answer with Jury Demand at p. 3 (doc. #50). The record does not reflect that Dr. Larry filed a separate answer perhaps due to the fact that this Court originally granted his motion to dismiss. To the extent that Dr. Larry joined in the defendants' answer, he demonstrated actual knowledge that he was being sued in his personal capacity. See Nails v. Riggs, 195 Fed. Appx. 303, 306 (6th Cir. 2006).

Pleadings subsequent to the complaint also should have put Dr. Larry on notice that he was being sued in his individual capacity. Early on in this litigation, Mr. Stewart sought to deny each of the named defendants, including Dr. Larry, representation by the Ohio Attorney General on the grounds that the defendants' conduct had gone beyond the scope of their duties as state employees. See Motion to Stop Representation of the Attorney General p. 1 (doc. #37). Moreover, Mr. Stewart reiterated in his response to the motion for summary judgment that he had sued Dr. Larry and the other defendants in both their individual and official capacities. This response itself is sufficient notice to Dr. Larry that he is being sued in his individual capacity. See Abdur-Rahman v. Michigan Dept of Corrections, 65 F.3d 489, 491 (6th Cir. 1995).

Applying the "course of proceedings" test to this record, the Court concludes that Dr. Larry was sufficiently on notice that he was being sued in his individual capacity. Accordingly, Mr. Stewart has satisfied any pleading requirements under the Sixth Circuit's present interpretation of Wells, supra. Lastly, Dr. Larry's defense that he acted at all times within the course and scope of his employment is unavailing. This theory was laid to rest by the Supreme Court in Hafer v. Melo, 502 U.S. 21 (1991)

which noted that such a rule "would absolutely immunize state officials from personal liability under §1983 solely by virtue of the 'official' nature of their acts," in contravention of Schuer, supra, and other immunity decisions. Id. at 22. The language in Cowan was, in fact, expressly disavowed by the Sixth Circuit in Ritchie v. Wickstrom, 938 F.2d 689, 692 (6th Cir. 1991), a case decided even prior to Hafer. The Court, will therefore, turn to the question of whether Mr. Stewart can prevail on the merits of his Eighth Amendment claims.

VI.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294, 297 (1991). This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately be described as "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of an inmate's condition are frequently in dispute. In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain. See Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811

F.Supp. 1221, 1226-28 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment.  See Napier v. Madison Co., Ky., 238 F.3d 739, 742 (6th Cir. 2201).  In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present.  Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element,in Farmer, 511 U.S. at 839-40, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Id. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Id.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

10

Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106 (1976); see also Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).

In addition to his claim under the Eighth Amendment, Mr. Stewart attempts to state a claim under the Due Process Clause of the Fourteenth Amendment.  Because "the Due Process Clause affords [prison inmates] no greater protection than does the Cruel and Unusual Punishment Clause," Whitley v. Albers, 475 U.S. 312, 327 (1986), the claims are redundant, and this Court need only consider Mr. Stewart's claims within the context of the Eighth Amendment.  See Lee v. Baker, 181 F.3d 101 (table), 1999 WL 282652 at *1 (6th Cir. Apr. 30, 1999).

Mr. Stewart has not submitted expert medical testimony or any other evidence to substantiate his claim that he suffered multiple strokes or that these alleged strokes occurred as the result of the stress test conducted by Dr. Larry.  While his statements regarding the events that allegedly transpired after he was returned to SOCF from OSU Medical Center describe a serious medical condition, Mr. Stewart cannot simply rely on these unsupported statements, but must come forward with evidence that would enable a trier of fact to find this requisite element in his favor.  Without medical evidence to rebut Dr. Larry's affidavit, there is no genuine issue as to whether Mr. Stewart has satisfied the objective component for deliberate indifference under the Eighth Amendment.  On the present record, clearly he has not.

Mr. Stewart likewise has not satisfied the subjective element of an Eighth Amendment claim.  Contrary to Mr. Stewart's unsupported statements, the use of dobutamine and a contrast agent was not experimental, but rather standard protocol for patients who are unable to walk on a treadmill for the period of time needed for a traditional stress test.  Thus, Dr. Larry, in

11

conducting the dobutamine stress test ordered by Mr. Stewart's referring physician, did not have the requisite subjective intent to cause Mr. Stewart to suffer unneeded pain.

Further, although there appears to be a disputed issue regarding the use of non-sterile syringe parts, this fact is not material to Mr. Stewart's claim of deliberate indifference. Assuming that non-sterile syringe parts were used, this would at most constitute medical malpractice not cognizable under the Eighth Amendment. Similarly, any lack of consent by Mr. Stewart to the dobutamine stress test as opposed to a treadmill test would involve only a state-law tort claim and would not rise to the level of cruel and unusual punishment.

VII.

Dr. Larry also seeks summary judgment on Mr. Stewart's conspiracy claim under 42 U.S.C. §1985. This claim consists of the conclusory allegation in paragraph 7 of the complaint that Dr. Larry and Dr. Bruce Martin, then chief medical officer for the ODRC, "conspired to use a new type of experimental enhancement serum untested nor FDA approved on the plaintiff..." This alleged conspiracy, according to the complaint, violated Mr. Stewart's right to be free from cruel and unusual punishment under the Eighth Amendment. Mr. Stewart subsequently dropped Dr. Martin as a defendant in this case. See Plaintiff's Motion to Object to Defendant John Larry's Motion to Dismiss at p. 2 (doc. #65).

It is clear that conspiracy claims under 42 U.S.C. §1985 must be pled with the same specificity as conspiracy claims under §1983. Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984); Alsup v. International Union of Bricklayers and Allied Craftsman, 679 F.Supp. 716, 720 (N.D. Ohio 1987). Further, even if a conspiracy had properly been pled, not every conspiracy to deprive someone of his or her constitutional rights is actionable

under § 1985.  Rather, the deprivation must be motivated by some class-based discriminatory animus.  <u>United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott</u>, 463 U.S. 825, 834 (1983); <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).  Section 1985 is available only to those "classes of insular minorities that were intended to receive special protection under the Equal Protection Clause of the Constitution...."  <u>Averitt v. Cloon</u>, 796 F.2d 195, 198 (6th Cir. 1986).  The failure to allege membership in a protected class, and discrimination based upon such class membership, requires dismissal of any claim under §1985(3).  <u>See</u> <u>also</u> <u>Macko v. Byron</u>, 641 F.2d 447, 450 (6th Cir. 1981); <u>Smith v. Martin</u>, 542 F.2d 688, 690 (6th Cir. 1976)(per curiam), <u>cert</u>. <u>denied</u>, 431 U.S. 905 (1977); <u>Eaton v. City of Solon</u>, 598 F.Supp. 1505, 1514 (N.D.Ohio 1984).

Mr. Stewart has not come forward with any evidence of a conspiracy between Dr. Larry and Dr. Martin.  As the Court has previously found, the enhancement serum used in Mr. Stewart's stress test was not new or experimental and was, in fact, approved by the FDA.  Furthermore, Mr. Stewart failed even to allege his membership in a protected class or discrimination based on such membership.  Therefore, summary judgment on this claim in Dr. Larry's favor is appropriate.

## VIII.

Based on the foregoing, it is recommended that Dr. Larry's motion for summary judgment (doc. #105) be granted and that Mr. Stewart's claims against Dr. Larry be dismissed.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which

objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp<br>
United States Magistrate Judge