IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lawrence Stewart, :

    Plaintiff, :

  v. : Case No. 2:03-cv-0687

Reginald Wilkinson, et al., : JUDGE SARGUS

    Defendants. :

<u>ORDER AND REPORT AND RECOMMENDATION</u>

    Plaintiff, Lawrence E. Stewart, a state prisoner, filed this action against a number of defendants asserting that his constitutional rights were violated while he was incarcerated at various prison facilities under the supervision of the Ohio Department of Rehabilitation and Correction. His claims generally arise out of medical care he received at those institutions, although he has also raised claims about the prison grievance procedure and his placement in segregation. Presently before the Court is a motion for summary judgment (#154) filed by the remaining defendants, Cheryl Jorgensen-Martinez, the former chief inspector for ODRC, Tammy Hartzer, the former warden at the Corrections Medical Center, Mona Parks, a nurse and former healthcare administrator at the Southern Ohio Correctional Facility, and Mary Sanford, a former nurse at SOCF. These defendants have also moved for an order staying consideration of any further motions pending a ruling on their summary judgment motion. For the following reasons, the Court recommends that summary judgment be granted and that this case be dismissed.

I.

    The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions
> on file, together with the affidavits,
> if any, show that there is no genuine
> issue as to any material fact and that
> the moving party is entitled to judgment
> as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). But summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. <u>Anderson</u>, 477 U.S. at 251.

## II.

The memorandum in support of the defendants' motion for summary judgment advances four arguments: (1) that Mr. Stewart cannot show that Nurse Parks, Nurse Sanford and Warden Hartzler were deliberately indifferent to his serious medical needs; (2) that the claims against Chief Inspector Jorgensen-Martinez should be dismissed because Mr. Stewart has no constitutional right to an effective grievance procedure; (3) that plaintiff's claims regarding his placement in administrative segregation at Pickaway Correctional Institute should be dismissed because Mr. Stewart has failed to sue the individual responsible for such placement;

2

and (4) that all remaining defendants are entitled to qualified immunity.  The Court will address each of these contentions to the extent necessary to resolve the defendants' summary judgment motion.  Before proceeding to the defendants' arguments in favor of summary judgment, however, the Court will first consider Mr. Stewart's request to strike the affidavits of Mona Parks and Karen Stanforth from the record.

III.

The defendants submitted the Declaration of Karen Stanforth (Exh. A) and the Declaration of Mona Parks (Exh. B) in support of their motion for summary judgment.  Mr. Stewart seeks to strike these "affidavits" on the grounds that they were not properly notarized.  This argument is without merit.  While an "affidavit" must be sworn to in front of an "officer authorized to administer oaths," see Peters v. Lincoln Elec. Co., 285 F.3d 456, 475 (6th Cir. 2002)(citing Black's Law Dictionary 54 (5th ed. 1979)), 28 U.S.C. §1746 provides that "unsworn declarations under penalty of perjury" may be used with the same force and effect to support, evidence, establish or prove any matter that is required or permitted to be supported by affidavit.  Declarations executed within the United States must substantially conform to the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  28 U.S.C. §1746(2).  Ms. Stanforth and Ms. Parks each state that they have made their unsworn declarations pursuant to §1746 under penalty of perjury and that their declarations are true.  Both declarations bear the date of September 29, 2008.  Upon review, the Court concludes that these declarations substantially comport with the requirements of §1746 and that they are, therefore, admissible for the purposes of Fed.R.Civ.P. 56.

Mr. Stewart also suggests that Ms. Stanforth's declaration

is somehow improper because she was previously dismissed as a defendant. There is no requirement, however, that the declarant be a party. The only requirements are that the declaration be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. Fed.R.Civ.P. 56(e)(1). Thus, the dismissal of Ms. Stanforth as a defendant provides no basis to strike her declaration. Likewise, the fact that Ms. Parks remains a defendant has no effect on the propriety of her declaration.

Mr. Stewart maintains that both declarations are false, as well as rehearsed. "It is settled that a naked attack upon the affidavits of a moving party is, without more, insufficient to place the credibility of the affiant in issue." Chemical Bank v. Hartford Accident & Indemnity Co., 82 F.R.D. 376, 378 (S.D.N.Y. 1979). See also Rose Marine Transportation, Inc. v. Kaiser Aluminum & Chemical Corp., 758 F.Supp. 1218, 1221 (N.D. Ill. 1990)(motion for summary judgment cannot be defeated by opposing party's assertion that movant's affidavit lacked credibility). The non-moving party must deny under oath the allegations contained in the affidavits and his failure to do so may result in the entry of summary judgment against him. Gillmore v. Proctor & Gamble Co., 417 F.2d 615, 617 (6th Cir. 1969)(citing Fed.R.Civ.P. 56). Unless the non-moving party submits evidence which raises an issue of material fact concerning the truth of the affidavits, the evidence submitted by the moving party must be accepted as true. See Kemper v. American Broadcasting Companies, 365 F.Supp. 1275, 1277 (S.D. Ohio 1973). Because Mr. Stewart's assertion is but a bare attack on the declarants' credibility, it does not constitute a valid reason to strike the declarations.

Mr. Stewart's final argument for striking the declarations

is their alleged untimeliness. The record demonstrates that both declarations were submitted at the same time as the defendants filed their motion for summary judgment. Rule 56(c) requires that the motion be served at least 10 days before any date set for hearing and that the responding party may serve affidavits at any time before the hearing day. Although the rule does not specifically set forth a time frame for the moving party's affidavits, it goes without saying that affidavits or declarations filed on the same day as the original motion are timely. The Court's Local Civil Rule 7.2(d) also requires the submission of evidence supporting a motion no later than the time that "the primary memorandum of the party relying on such evidence" is due, which is precisely what occurred here. Accordingly, Mr. Stewart's request for the Court to strike the declarations of Ms. Stanforth and Ms. Parks will be denied for all of the above reasons.

IV.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294, 297 (1991). This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately be described as "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of

an inmate's condition are frequently in dispute.  In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain.  <u>See Chance v. Armstrong</u>, 143 F.3d 698, 702-03 (2d Cir. 1998); <u>see also</u> <u>Harrington v. Grayson</u>, 811 F.Supp. 1221, 1226-28 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment.  <u>See</u> <u>Napier v. Madison Co., Ky.</u>, 238 F.3d 739, 742 (6th Cir. 2001).  In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present.  <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in <u>Farmer</u>, 511 U.S. at 839-40, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." <u>Id</u>. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  <u>Id</u>.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if

6

the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106 (1976); see also Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).

The defendants do not dispute that Mr. Stewart has a serious medical condition. He suffered a stroke at the Southern Ohio Correctional Facility following his return from the Ohio State University Medical Center. Mr. Stewart was transported to OSU on July 10, 2002, for a Dobutamine Stress Echocardiagram. While undergoing this procedure, he exhibited severe wheezing and respiratory distress. The procedure was stopped, and the respiratory therapist, who was present, administered a bronchodilator. Mr. Stewart was then taken to the emergency room at OSU where he was treated and released. He was given orders for certain medications, including Meclizine, Prednisone, and Albuterol. The next day, Dr. Pedro Obregon, a physician at SOCF, wrote follow-up orders based on the emergency room doctor's recommendations. On July 12, 2002, at 12:35 p.m., corrections officers brought Mr. Stewart to the infirmary. Defendant Parks, who worked both as a nurse and the health care administrator for SOCF at that time, noted that he was alert, but that his mouth was drooping, his left side weak, and his speech slurred. Mr. Stewart was taken to the Pike County Hospital emergency room and admitted the following day to OSU. On July 16, 2002, he was discharged from OSU to CMC.

Given that Mr. Stewart suffers from a serious medical condition, the question becomes whether Mr. Stewart can satisfy

the second component of his Eighth Amendment claim, namely that one or more of the remaining defendants were deliberately indifferent to his serious medical condition. He alleges that when he returned to SOCF from OSU on July 10, 2002, he could not walk. Corrections officers put him in a wheelchair and took him to the infirmary where he allegedly was seen by Nurses Parks and Sanford. According to Mr. Stewart, the two nurses said he looked all right and sent him back to his cell in administrative segregation. After returning to his cell, he claims that the next thing he remembers is waking up in Pike County Hospital on July 12, 2002. His mother told him he had suffered a stroke and had lain in his cell for two days before anyone found him.

Nurse Parks specifically denies under penalty of perjury having any recollection of seeing Mr. Stewart on July 10, 2002, and further declares that his medical chart does not indicate that either she or Nurse Sanford saw him when he returned from OSU. Assuming, however, that Mr. Stewart's version of events is true, the defendants contend the fact that he was discharged from OSU demonstrates that the emergency room physician did not regard his condition as serious enough to warrant hospitalization. In their view, even if the two nurses did see him at that time and reported that he looked okay, Mr. Stewart has failed to show that they knew of and disregarded an excessive risk to his health or safety.

The defendants also deny that Mr. Stewart lay in his cell for two days after his stroke before anyone found him. Nurse and Health Care Administrator Parks declares that in July 2002, nurses at SOCF conducted sick call five days per week in the segregation units and that they distributed pills there three times a day. Thus, the defendants contend that Mr. Stewart could not have lain in his cell for two days before anyone discovered that he had suffered a stroke. Moreover, they point to the fact that Mr. Stewart has not come forward with any admissible evidence to support this claim, but relies instead on what his mother allegedly told him which must presumably have come from

8

yet another unnamed source.  Nurse Parks also stated in her declaration that Mr. Stewart was alert when she saw him on July 12, 2002, contradicting his claim.  She also averred that she visited Mr. Stewart that evening at Pike County Hospital after making several phone calls in an effort to get Mr. Stewart admitted to OSU.  After several additional calls on the following day, Mr. Stewart was admitted to OSU.

Mr. Stewart's allegations concerning Nurses Park and Sanford, at best, make out a case that these defendants acted negligently when they pronounced him "okay" and sent him back to his cell upon his return from OSU.  His claim that he lay unattended in his cell for two days is based solely on hearsay and may not be considered on a summary judgment motion.  See Daily Press, Inc. v. United Press Int'l, 412 F.2d 126, 133 (6th Cir.), cert. denied, 396 U.S. 990 (1969).  The only admissible evidence consists of the defendants' declarations which flatly contradict this claim.  Mr. Stewart needed to come forward with specific facts showing that Nurses Parks and Sanford were deliberately indifferent to his serious medical needs, rather than merely negligent.  He has failed to do so.  Consequently, the Court concludes that Nurses Parks and Sanford are entitled to summary judgment as to plaintiff's Eighth Amendment medical claims.

Mr. Stewart also alleges that Warden Hartzler violated his right to be free from cruel and unusual punishment when she purportedly denied him physical therapy, speech therapy, and a suitable wheelchair.  When he asked her why he had not been provided the high-back wheelchair for which he had allegedly been measured, she responded that she was unaware that the doctor had ordered one for him.  When he told her he needed speech therapy, she allegedly said "we'll see."  Mr. Stewart stated at his deposition that, following these two communications, he had no further interactions with her concerning the wheelchair or speech therapy.

Karen Stanforth is the Health Care Administrator at the

Madison Correctional Institution where Mr. Stewart was confined as of the date the defendants filed their motion for summary judgment. As health care administrator at that facility, she was one of the custodians of Mr. Stewart's medical records. Mr. Stewart was under Warden Hartzler's supervision at CMC from July 16, 2002, to July 29, 2002. He returned to CMC on August 1, 2002, where he remained until November 8, 2002. According to Nurse Stanforth's review of these medical records, Mr. Stewart was evaluated for physical therapy at CMC on July 17, 2002. Based on this evaluation, it was recommended that he receive physical therapy five times per week. The records show that physical therapy was discontinued on July 23, 2002, because Mr. Stewart refused to comply. Therapy recommenced on August 14, 2002, but was discontinued for a second time on August 23, 2002, because Mr. Stewart was noncompliant and verbally abusive to the therapy staff. More importantly, Nurse Stanforth stated under penalty of perjury that physical therapy, speech therapy, and the use of a wheelchair can only occur upon a physician's order. Without such an order, she declares that no other ODRC staff, including wardens and nurses, may provide these services or equipment to an inmate.

Based on Nurse Stanforth's unrebutted declaration, Warden Hartzler had no authority to provide speech therapy or a wheelchair to Mr. Stewart in the absence of a physician's order. Mr. Stewart has submitted no evidence that a physician ordered speech therapy during his confinement at CMC. Thus, he cannot simply rely on Warden Hartzler's equivocal response to his request for speech therapy as showing she was deliberately indifferent to his need for such services. While Mr. Stewart did claim in his deposition that a wheelchair had been ordered, he failed to produce any evidence that Warden Hartzler was aware that a wheelchair was ordered or that she interfered with the delivery of this equipment during the relatively short periods of time that Mr. Stewart was confined at CMC. Thus, the Court concludes that there are no genuine issues of material fact and

10

that Warden Hartzler is entitled to judgment as a matter of law on Mr. Stewart's Eighth Amendment medical claim.

V.

In addition to his claims that the defendants were deliberately indifferent to his serious medical needs, Mr. Stewart alleges in the Complaint that Nurse Parks physically assaulted him on two separate occasions.  In his deposition, however, he describes only one such assault.  This allegedly occurred when he was sent to the infirmary due to his severe headaches.  Mr. Stewart claims that Nurse Parks smacked him in the head with a closed fist.  When he asked her to stop because it hurt, she allegedly told him that she was not hitting him that hard, and that it should not have hurt.  According to Mr. Stewart, this incident took place prior to his stress test and his stroke.

In her declaration, Nurse Parks denies hitting Mr. Stewart or striking any other inmate during her tenure at SOCF.  According to Nurse Stanforth's declaration, Mr. Stewart's medical records also fail to reflect that he saw Nurse Parks complaining of headaches in the month prior to his stroke.  Thus, the defendants argue that, apart from Mr. Stewart's deposition testimony, there is no evidence that this alleged assault ever happened.

Assuming that Nurse Parks did strike Mr. Stewart on this one occasion, as the Court must do for purposes of this summary judgment motion, the question remains whether the "claim of assault rises to a level of constitutional magnitude." Moore v. Holbrook, 2 F.3d 697, 700 (6th Cir. 1993).  Courts are frequently confronted with this question in the context of an alleged use of excessive force by prison guards against inmates.  In such cases, "the proper analysis [is] whether the force ... applied was [done] in a good faith effort to maintain or restore discipline, or was maliciously and sadistically imposed to cause harm." Id. at 700-01(citing Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)).

In Hudson, the Supreme Court enunciated the general test for

11

claims brought under the Eighth Amendment.  503 U.S. at 8.  To
establish the first element, an inmate must show that the alleged
force is "objectively harmful enough to establish a
constitutional violation."  Id. (internal quotation marks
omitted).  If the inmate satisfies the first element, he must
then demonstrate that the corrections officer acted with a
sufficiently culpable state of mind.  Id.  The Court recognized
that something more than de minimis force is required to state a
claim under the Eighth Amendment.  See id. at 9 ("[not] every
malevolent touch by a prison guard gives rise to a federal cause
of action").

    Mr. Stewart does not claim that the force used by Nurse
Parks resulted, or was likely to have resulted, in any
objectively verifiable injury.  See Leary v. Livingston County,
528 F.3d 438, 443 (6th Cir. 2008).  He simply said that it hurt.
Mr. Stewart also does not claim that Nurse Parks struck him in
the head again after he asked her to stop.  Although the
Complaint alleges that she assaulted him on two separate
occasions, his deposition testimony recounted only one such
incident.  See id. at 444 (plaintiff may not create triable issue
of fact by stating one thing in a complaint and something else in
a deposition).  Given the lack of any other evidentiary support,
there is no factual issue as to whether Nurse Parks' conduct was
anything other than isolated, brief, and inconsequential.  See
Jackson v. Madery, 158 Fed. App'x 656, 662 (6th Cir. 2005).
Thus, even were the smack shown to be malevolent, it would not
rise to the level of an Eighth Amendment violation.  See id.

VI.

    The Court previously dismissed Mr. Stewart's claim relating
to the alleged failure of the defendants to respond to certain
grievances which he had filed.  See March 23, 2004 Order (#27).
The dismissal of this claim was not the subject of any appeal or
motion for reconsideration.  According to Mr. Stewart's
deposition testimony, his claims against both Chief Inspector
Jorgensen-Martinez and Linda Coval stem solely from their roles

at the ODRC in processing his grievances. Ms. Coval was previously dismissed as a defendant in this case. Given Mr. Stewart's testimony and the Court's prior determination that he has no constitutional right to an effective grievance procedure, Chief Inspector Jorgensen-Martinez is entitled to be dismissed as a defendant, as well.

## VII.

Mr. Stewart's next claim relates to his placement in administrative segregation and the unsuitability of the cell he occupied for persons with his health complications. He clarified in his deposition that the segregation cell described in the Complaint was not at the Corrections Medical Center, but at the Pickaway Correctional Institution, and that it was not Warden Hartzler who placed him there, but C. Crockett-Harris, the warden at PCI. The defendants argue that in light of this deposition testimony, Mr. Stewart's claim arising from his administrative segregation at PCI should be dismissed because Ms. Crockett-Harris is not a defendant and no existing defendant was responsible for such placement. They also contend that although Mr. Stewart stated in his deposition that he asserts a claim against Warden Hartzler arising from his placement in administrative segregation at CMC, this claim does not appear anywhere in the Complaint. According to them, had Mr. Stewart even pleaded such a claim, it would fail because the undisputed evidence establishes that CMC is a modern facility only fifteen years old and that its segregation cells, unlike those described in the Complaint, are designed and equipped to meet the needs of infirm patients.

Mr. Stewart did not directly address these arguments in his response to the defendants' motion for summary judgment. Instead, he filed an objection to the order entered by Judge Sargus on September 19, 2008, which "remov[ed] Ms. Crockett-Harris as a named defendant." In that order, Judge Sargus pointed out that Mr. Stewart was permitted to amend the Complaint to add Ms. Crockett-Harris as a defendant. Because she was never

13

served, however, Judge Sargus concluded that, Ms. Crockett-Harris was never made a party to this action. The Court will construe Mr. Stewart's objection as a motion for reconsideration.

Mr. Stewart states that Gary Wipperman, a former inmate at PCI, prepared the proper paperwork and mailed a summons and USM-285 forms to the United States Marshal bearing Ms. Crockett-Harris' name, rank and civil service position and indicating where she could be located at PCI. Mr. Stewart specifically references Mr. Wipperman's affidavit executed on February 10, 2004, as attesting to these facts. He goes on to point out that Ms. Crockett-Harris, as warden, was ultimately in control of all outgoing mail from the unit where he and Inmate Wipperman were housed. The implication is that Ms. Crockett-Harris must have intercepted the paperwork sent by Inmate Wipperman and thereby prevented the plaintiff from obtaining proper service.

Assuming that Mr. Stewart has shown a good-faith attempt to serve Ms. Crockett-Harris in February 2004, he has not established grounds for reconsideration of Judge Sargus' order. This is demonstrated by a chronology of what occurred after February 2004. On April 13, 2005, the Court reconsidered a prior decision and permitted Mr. Stewart to amend the Complaint to add Ms. Crockett-Harris as a defendant and ordered him to submit a summons and USM-285 form for Ms. Crockett-Harris within thirty days. Although Mr. Stewart filed an amended complaint on April 21, 2005, which named Ms. Crockett-Harris as a defendant, there is nothing in the record to indicate that either he or Inmate Wipperman prepared and mailed the summons and USM-285 form to the Clerk or the Marshal after that date. Furthermore, even if Mr. Stewart believed that service of Ms. Crockett-Harris had somehow been obtained, he did not move for a default judgment when no answer was filed on her behalf or take any other action over the next three years with respect to Ms. Crockett-Harris. In light of this lack of diligence, he is not entitled to any relief for his failure to make timely service. The Court will, therefore, recommend that Mr. Stewart's motion for reconsideration (#155) be

denied.

The Court also agrees with the defendants that, in light of Mr. Stewart's deposition testimony, it is clear that his claim involving the conditions of his administrative segregation arose during his confinement at PCI, and not at CMC. Since he has identified Ms. Crockett-Harris as the individual solely responsible for his placement in the "hole" at PCI, the defendants are entitled to summary judgment on the basis that none of them were personally involved in this allegedly unconstitutional conduct.

The Court understands Mr. Stewart's deposition testimony as asserting that Warden Hartzler illegally placed him in administrative segregation while he was confined at CMC, not that the conditions there were in any way similar to those at PCI. Mr. Stewart did not plead this claim in the Complaint or come forward with any evidence that would support such a claim. Accordingly, to the extent he is now asserting such a claim, Warden Hartzler is entitled to summary judgment.

VIII.

Lastly, the defendants argue in conclusory fashion that, as state employees, they are entitled to qualified immunity for any damage claims arising from their alleged violations of Mr. Stewart's constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known). Because the Court has determined as a matter of law that no constitutional violations occurred, it is unnecessary to determine whether the rights claimed to have been violated were clearly established. See Bukowski v. City of Akron, 326 F.3d 702, 708 (6th Cir. 2003)(court did not reach "clearly established" prong of qualified immunity analysis where officials did not violate plaintiff's due process rights).

IX.

After the filing of the defendants' motion for summary judgment, Mr. Stewart, on March 16, 2009, moved for a stay of execution and a preliminary injunction against certain individuals employed by the Ohio Department of Rehabilitation and Correction and the Frazier Health Center, including Dr. Lawrence Mendel, the Assistant Medical Director for ODRC, Tobbi Valentine, the Medical Administrator at FHC, and Missy Roush, a nurse at FHC.  He seeks an order directing these individuals to return his new high-back wheelchair with flat-free tires and a new Roho cushion for which he was allegedly fitted at OSU in November 2008.  According to Mr. Stewart, Dr. Mendel and Nurses Roush and Valentine took this wheelchair from him on March 10, 2009, and forced him to accept a worn-out wheelchair that is much too small for his needs.  Mr. Stewart requested that further proceedings in this case be stayed pending return of his rightful wheelchair.  On April 2, 2009, Mr. Stewart filed another motion for preliminary injunction again seeking return of the wheelchair, as well as compensatory and punitive damages.  On April 22, 2009, he filed a motion for monetary damages against Dr. Mendel, Nurse Roush, and Nurse Valentine for allegedly depriving him of his wheelchair and cushion in deliberate indifference to his medical needs.

None of the individuals against whom Mr. Stewart is seeking injunctive and ancillary relief are defendants in this action.  To be enjoined a party must be before the Court.  See Leblanc-Sternberg v. Fletcher, 763 F.Supp. 1246, 1249 ((S.D.N.Y. 1991).  See also Moeck v. Zajackowski, 541 F.2d 177, 179 (7th Cir. 1976)(jurisdictional power of court issuing injunction depends on personal jurisdiction over individuals to be enjoined); Parker v. Commonwealth of Massachusetts Dept. of Corrections, 1996 WL 74215 (D. Mass. Feb. 5, 1996)(prisoners may not obtain injunctive relief against prison officials who are not defendants and have not been served with process).  "It is elementary that one is not bound by a judgment *in personam* resulting from litigation in

which he is not designated a party or to which he has not been made a part by service of process." <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 110 (1969)(citation omitted). Mr. Stewart has not sought leave to file a supplemental complaint. Accordingly, Dr. Mendel and Nurses Roush and Valentine are not even proposed to be parties to this action. For this reason, the Court cannot subject them to an injunction unless and until Mr. Stewart is permitted to add them as defendants and serve them with process. <u>See</u> <u>Davis v. Caruso</u>, 2008 WL 878878 at *4 (E.D. Mich. Mar. 28, 2008) (prisoner who filed action concerning conditions at one institution cannot obtain injunctive relief against officials at different institution who have not been named defendants); <u>Skinner v. Unknown Grandson</u>, 2006 WL 1997392 (E.D. Mich. Jul. 16, 2006)(same). The Court, therefore, will recommend that each of the plaintiff's motions be denied.

X.

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (#154) be granted and that Mr. Stewart's claims against defendants Jorgensen-Martinez, Hartzler, Parks, and Sanford be dismissed. Mr. Stewart's request to strike the affidavits of Mona Parks and Karen Stanforth is denied. It is further recommended that Mr. Stewart's motion for reconsideration (#155), motion for stay of execution and preliminary injunction (#162), second motion for preliminary injunction (#167), and motion for monetary damages (#175) be denied. Should this Report and Recommendation be adopted, the defendants' motion to stay all further motions (#170) will be moot.

<u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to

those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge